**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jack H. Short, M.D, et al., | No. CV-24-01783-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Dignity Health d/b/a Dignity Health Medical Group of Arizona; and Pooja Shah, M.D., | |
| Defendants. | |

Plaintiffs have filed a motion to remand. Doc. 13. The motion is fully briefed and neither side requests oral argument. For reasons stated below, the Court will grant the motion and remand this case to state court.[1]

**I.    Background.**

Plaintiffs are 14 physicians who reside in Arizona and are employed by Defendant Dignity Health ("Dignity"), a California entity. In June 2024, Plaintiffs filed a complaint in state court against Dignity and its Chief Medical Officer ("CMO"), Dr. Pooja Shah, an Arizona resident. Doc. 1-1 at 6-34. According to the complaint, Plaintiffs met with Dr. Shah in July 2023 and negotiated revisions to their pay structure (the "Wage Agreement"). *Id.* ¶ 40. Plaintiffs and Dr. Shah agreed that Dignity would adjust Plaintiffs' pay,

---

[1] Given this ruling, the Court will not address the motion to dismiss (Doc. 14), and the motion to transfer before Judge Bolton should be denied as moot (*see* Doc. 10; Doc. 35, *Ghaemmaghami v. Dignity Health*, No. CV-24-00052-PHX-SRB).

1

retroactive to July 1, 2023, as follows: (1) a 6.7% increase to base and value compensation; (2) a 25% increase of the extraordinary shift rate; (3) a new extra night differential of $250; (4) a $10,000 annual stipend for ECMO trained physicians; and (5) an 8.7% increase of total compensation (collectively, the "Terms"). *Id.* ¶¶ 41-42. On July 19, 2023, Dr. Shah memorialized the Wage Agreement's Terms in an email she sent to Plaintiffs. *Id.* ¶ 42. Plaintiffs decided to remain employed by Dignity instead of accepting more lucrative employment elsewhere, believing Dr. Shah negotiated on Dignity's behalf and relying on her representations that Dignity would honor the Terms. *Id.* ¶¶ 38, 44.

Over the next several months, Dignity refused to further memorialize the Terms in amendments to Plaintiffs' employment contracts and claimed the Terms would not be binding unless Plaintiffs executed new written contracts. *Id.* ¶¶ 45-46, 53-75. Dignity continued to compensate Plaintiffs at their former pay rates. *Id.* ¶ 52.

In March 2024, Plaintiffs sent Dignity a letter stating that it had breached the Wage Agreement and demanding that it pay Plaintiffs their unpaid wages. *Id.* ¶ 76. In response, Dignity claimed that Dr. Shah, in her capacity as Dignity's CMO, was not authorized to enter the Wage Agreement on Dignity's behalf. *Id.* ¶ 77. To date, Dignity and Dr. Shah have refused to honor the Terms of the Wage Agreement. *Id.* ¶¶ 80-81.

The complaint asserts several state law claims against Dignity for unpaid wages, breach of contract, unjust enrichment, and retaliation (counts one, three, and five through eight). *Id.* ¶¶ 133-40, 147-51, 159-96. The complaint also asserts state law claims for breach of contract and promissory estoppel against both Dignity and Dr. Shah (counts two and four). *Id.* ¶¶ 141-46, 152-58.

Defendants removed the case to this Court in July 2024, asserting that counts two and four are not viable under Arizona law and Plaintiffs fraudulently joined Dr. Shah in an effort to destroy the diversity jurisdiction that exists between Plaintiffs and Dignity. Doc. 1. With respect to the breach of contract claim in count two, Defendants contend that no contract exists because Dr. Shah lacked authority to contract on Dignity's behalf and could not have entered the purported Wage Agreement in her personal capacity. *Id.* ¶¶ 18,

21, 24. Regarding the promissory estoppel claim in count four, Defendants contend that any reliance on the alleged promise by Dr. Shah in her personal capacity is not justified because Plaintiffs knew Dr. Shah lacked authority to reach an agreement with them, and no agreement was in fact reached during the negotiation at issue. *Id.* ¶ 21. Plaintiffs counter that they properly assert viable alternative breach of contract and promissory estoppel claims against Dr. Shah. Doc. 13 at 8-15. Plaintiffs argue that remand is required because the Court lacks diversity jurisdiction and Defendants have not met their burden to establish fraudulent joinder. *Id.* at 7-8.

## II. Legal Standards.

### A. Removal Statute and Defendants' Burden.

Under 28 U.S.C. § 1441(a), a civil case brought in state court may be removed to the federal district court in the district where the action is pending if the district court has original jurisdiction. The removal statute is to be strictly construed against removal jurisdiction. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). The "strong presumption" against removal "means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal jurisdiction must be rejected, and the case remanded to state court, "if there is any doubt as to the right of removal in the first instance." *Id.*

### B. Removal Based on Diversity Jurisdiction.

Federal district courts have original jurisdiction in cases between citizens of different states involving claims greater than $75,000. 28 U.S.C. § 1332(a)(1). Section 1332 requires complete diversity between the parties – that is, the citizenship of the plaintiff must be diverse from the citizenship of each defendant. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).[2]

---

[2] For purposes of diversity jurisdiction, "an individual is 'citizen' of the state in which he or she resides . . . and a corporation is a citizen of every state by which it has been incorporated and of the state in which it has its principal place of business." *Ouma v. Asher*, No. 3:18-CV-00888-AC, 2019 WL 2529556, at *3 (D. Or. May 30, 2019) (citing 28 U.S.C. § 1332(c)). Plaintiffs and Dr. Shah reside in Arizona and Dignity is a California

3

When a civil action meets the criteria for diversity jurisdiction and is filed in state court, the action may be removed to federal court. 28 U.S.C. § 1441(b). An exception to the complete diversity requirement exists "where a non-diverse defendant has been 'fraudulently joined.'" *Morris*, 236 F.3d at 1067 (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).

### C.   Fraudulent Joinder.

"There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)). Defendants do not claim actual fraud in Plaintiffs' pleading. *See* Doc. 1-1 ¶¶ 1-17.

Fraudulent joinder is established the second way if a defendant shows that an individual joined in the action cannot be liable on any theory. "But if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare*, 889 F.3d at 548 (cleaned up). "A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against finding fraudulent joinder." *Id.* (quoting *Hunter*, 582 F.3d at 1046); *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) ("Fraudulent joinder must be proven by clear and convincing evidence.").

While the standard for fraudulent joinder is similar to the analysis required for a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief, the two are not equivalent. "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Grancare*, 889 F.3d at 549; *see Hoffman v.*

---

corporation with its principal place of business in California. *See* Doc. 1-1 at 7-8; Doc. 1 ¶¶ 6-8.

*Cincinnati Ins. Co.*, No. CV-21-00106-TUC-JCH, 2021 WL 4962648, at *2 (D. Ariz. Oct. 26, 2021) (explaining that "the Rule 12(b)(6) standard requires plausibility while fraudulent joinder only requires the possibility of sufficiently pleaded facts to state a claim to relief"). "A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits. Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Grancare*, 889 F.3d at 549 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). "The relative stringency of the standard accords with the presumption against removal jurisdiction, under which [courts] 'strictly construe the removal statute,' and reject federal jurisdiction 'if there is any doubt as to the right of removal in the first instance.'" *Id.* at 550 (quoting *Gaus*, 980 F.2d at 566).

**III.  Discussion.**

    **A.  Count Two – Breach of Contract Claim.**

Under Arizona law, a breach of contract claim has three elements – a contract, breach, and resulting damages. *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)). With respect to Dignity, count two alleges that "[t]he Wage Agreement is a valid and enforceable contract that required Dignity to pay Plaintiffs increased wages pursuant to the Terms." Doc. 1-1 ¶ 142. Alternatively, count two alleges that, to the extent "Defendant Shah was not authorized to enter the Wage Agreement on Dignity's behalf, the Wage Agreement required Defendant Shah, in her individual capacity, to pay Plaintiff[s'] increased wages pursuant to the Terms." *Id.* ¶ 143. Count two further alleges that Dignity or Dr. Shah breached the Wage Agreement by failing to pay Plaintiffs consistent with the Terms and Plaintiffs have suffered damages as a result. *Id.* ¶¶ 144-45.

A corporate entity such as Dignity "necessarily acts through its agents, who, in turn, may only bind a principal within the scope of their authority, actual or apparent." *Best*

5

*Choice Fund, LLC v. Low & Childers, P.C.*, 269 P.3d 678, 686-87 (Ariz. Ct. App. 2011). Defendants assert that Dr. Shah, in her capacity as CMO, acts as an agent of Dignity and therefore cannot be personally liable for breach of the Wage Agreement. Doc. 1 ¶¶ 22-23 (citing *Ferrarell v. Robinson*, 465 P.2d 610, 612 (Ariz. Ct. App. 1970) ("One who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement and thus incurs no personal liability for the principal's breach of that agreement."); *Myers-Leiber Sign Co. v. Weirich*, 410 P.2d 491, 493 (Ariz. Ct. App. 1966) (explaining that an agent who negotiates a contract on behalf of his principal can "avoid personal liability [by] disclos[ing] not only his agency but also the identity of his principal")).

To avoid its own liability for breach of the Wage Agreement, however, Dignity takes the position that it has never given Dr. Shah independent authority to engage in contract negotiations with physicians and Dr. Shah lacked authority to reach an agreement with Plaintiffs on Dignity's behalf. Doc. 1 ¶¶ 21, 24; *see also* Doc. 1-1 ¶ 77 (alleging that Dignity claimed Dr. Shah was not authorized to enter the Wage Agreement on Dignity's behalf). Plaintiffs explain that Dignity's insistence that Dr. Shah lacked authority to bind Dignity to the Wage Agreement serves as the very basis for Plaintiffs' alternative claims against Dr. Shah in her personal capacity. Doc. 13 at 9.[3]

Plaintiffs argue that the breach of contract claim against Dr. Shah is viable under Arizona law, relying on the Arizona Supreme Court's decision in *Lois Grunow Memorial Clinic v. Davis*, 66 P.2d 238, 241 (1937). *Id.* at 8-10.[4] In *Davis*, the plaintiff accepted a job at a medical clinic based on an agreement he entered with Dr. Sweek, a member of the medical clinic, that the plaintiff would be paid a guaranteed salary. 66 P.2d at 239-40. When the plaintiff was paid less, he sued the medical clinic for breach of contract. The

---

[3] Plaintiffs also note, correctly, that Dignity's reliance on *Ferrarell* and *Myers-Leiber* is misplaced because in each case there was no dispute that the agent was authorized to enter the contract on the principal's behalf. *Id.* at 10-12.

[4] Plaintiffs also cite authority for the proposition that Dr. Shah can be held liable for breach of implied warranty of authority. *Id.* at 9 (citing *Zugsmith v. Mullins*, 344 P.2d 739, 742-43 (Ariz. 1959); Restatement (Third) of Agency § 6.10 (2006)). The complaint asserts no implied warranty claim, but for reasons explained later, remand is warranted to allow Plaintiffs' to seek leave to assert the claim.

6

medical clinic argued that Dr. Sweek lacked authority as its agent to bind the medical clinic to the agreement. *Id.* at 241. The Arizona Supreme Court agreed and vacated the judgment against the medical clinic. *Id.* at 241-44. The court made clear, however, that the plaintiff was not without a legal remedy against Dr. Sweek:

> We have no doubt that plaintiff acted in good faith all through the proceedings, and that he removed his office to Phoenix, relying upon the statements of Dr. Sweek, and believing that he had an unconditional guaranty from the defendant. As we have pointed out, this is not true, but under the law he was not without remedy. When an agent makes a contract ostensibly on behalf of a disclosed principal, without sufficient authority to do so, it is the agent and not the principal who is liable upon such contract, and in the present case plaintiff's remedy was against Dr. Sweek and not as against the defendant corporation.

*Id.* at 244; *see also Telecom Acquisition Corp., I, LLC v. Mercer*, No. 2:05-CV-0727-RLH-PAL, 2007 WL 9734343, at *1 (D. Nev. June 11, 2007) ("Plaintiff correctly asserts that 'when an agent makes a contract ostensibly on behalf of a disclosed principal, without sufficient authority to do so, it is the agent and not the principle who is liable upon such contract.'" (quoting *Davis*)).

As noted, Defendants assert that Dr. Shah lacked authority to enter the Wage Agreement on Dignity's behalf. *See* Doc. 1 ¶¶ 21, 24; Doc. 1-1 ¶ 77. Given this position, and to avoid being left without a legal remedy if Dignity establishes that Dr. Shah lacked authority to act on its behalf, Plaintiffs assert an alternative breach of contract claim against Dr. Shah personally. *See* Docs. 1-1 ¶ 143, 13 at 10, 23 at 4. Under Rule 8's liberal pleading policy, Plaintiffs may assert alternative, inconsistent claims against Dignity and Dr. Shah. *See* Ariz. R. Civ. P. 8(e)(2)-(3) (providing that a party may set out two or more statements of a claim alternatively and regardless of consistency); Fed. R. Civ. P. 8(d)(2)-(3) (same); *see also Anderson v. Edward D. Jones & Co.*, 990 F.3d 692, 700-01 (9th Cir. 2021) (explaining that in light of Rule 8's liberal pleading, "a plaintiff may pursue multiple, even if inconsistent, theories of recovery" and "a pleading should not be construed as an admission against another alternative or inconsistent pleading") (citation omitted); *Edward*

7

*Greenband Enters. of Ariz. v. Pepper*, 538 P.2d 389, 391 (Ariz. 1975) (Rule 8 "specifically sanction[s] an inconsistent pleading").

Defendants attempt to distinguish *Davis* because it involved a small medical clinic and representations of one of its members. Doc. 20 at 12 (citing *Davis*, 66 P.2d at 240). They also note that the medical clinic's board of directors had adopted a resolution that allowed Dr. Sweek to enter into agreements with physicians on behalf of the medical clinic. *Id.* But Defendants do not explain why these facts are significant and fail to address the conclusion in *Davis* that the plaintiff's remedy was to bring a breach of contract claim against Dr. Sweek in his personal capacity. *See Davis*, 66 P.2d at 244. Because the scope of Dr. Shah's authority to contract on Dignity's behalf has not yet been adjudicated, Plaintiffs have appropriately pursued claims against both Dignity and Dr. Shah. *See* Doc. 23 at 3. Defendants fail to show there is no possibility the state court could find a viable contract claim against Dr. Shah. *See Grancare*, 889 F.3d at 548.

Defendants make much of the fact that the complaint alleges Dr. Shaw was acting on behalf of Dignity during the negotiation and the Wage Agreement is a contract between Plaintiffs and Dignity. Doc. 20 at 7-9 (citing Doc. 1-1 ¶¶ 38, 41, 43-46). Defendants complain that Plaintiffs "seek to pivot from the admitted facts – advancing a contradictory legal theory that Dr. Shah was acting not 'on behalf of Dignity' but on her own behalf, and that Dr. Shah sought to personally guarantee all compensation changes discussed for . . . Plaintiffs." *Id.* This is not correct. Plaintiffs do not allege that Dr. Shah negotiated on her own behalf and personally guaranteed the Wage Agreement. Doc. 23 at 4. They allege she purported to act on behalf of Dignity and they believed she was so acting. This is precisely the circumstances *Davis* says can lead to her personal liability if, in fact, she had no such authority. As noted, Plaintiffs are permitted to assert alternative claims at the pleading stage. *See* Ariz. R. Civ. P. 8(e)(2)-(3); Fed. R. Civ. P. 8(d)(2)-(3).

In opposing remand, Defendants rely heavily on the Physician Employment Agreement ("PEA") between Plaintiffs and Dignity, Dr. Shah's July 19, 2023 email to Plaintiffs, and Plaintiffs' March 2024 demand letter to Dignity. *See* Doc. 1-2; Doc. 20 at

2-3. Defendants contend that this evidence shows the impossibility of Dr. Shah's personal liability. Doc. 20 at 8-12.[5]

Defendants contend that the PEA governs Plaintiffs' compensation and may be amended only in writing. Section 2.1(a) of the PEA provides: "Employer shall pay to Physician the compensation set forth in Part II for all services provided under this Agreement[.]" Doc. 1-2 at 15. In turn, Part II sets forth certain compensation terms and states: "Employer shall pay Physician as follows and in accordance with the Dignity Health Compensation Plan Manual." *Id.* at 20. Section 6.2 provides that the PEA "may be modified or amended only by mutual written agreement of the parties." *Id.* at 18. Defendants assert that these provisions of the PEA – particularly Section 6.2 – foreclose the possibility that Dr. Shah, on behalf of herself or Dignity, had the capacity to enter into an enforceable agreement with Plaintiffs regarding terms of their compensation. Doc. 20 at 8-9.

Plaintiffs counter that the parties were not required to sign a separate agreement to render the Wage Agreement enforceable because it simply modified the terms of the controlling Health Compensation Plan Manual (the "Compensation Manual"), under which Plaintiffs are to be paid. Doc. 23 at 9 (citing Doc. 1-2 at 20). Plaintiffs made this position clear in the demand letter, explaining: "To the extent Dignity believes that the [Wage Agreement does] not comply with Section 6.2 of [the PEA], the modifications amended the terms of the . . . Compensation Manual, not the terms of the [PEA]." *Id.* (quoting Doc. 1-2 at 80 n.4). Plaintiffs note that the Compensation Manual "may be updated by Dignity Health from time to time," and upon any discrepancy between the compensation terms in the PEA and the terms in the Compensation Manual, the Compensation Manual "shall

---

[5] Noting that the evidence was included with the notice of removal, Defendants assert that Plaintiffs should be barred from addressing the evidence for the first time in their reply brief. Doc. 20 at 5 n.1. The Court does not agree. The fact that the Court may look beyond the pleadings for fraudulent joinder purposes does not preclude Plaintiffs from moving to remand on the ground that the complaint itself pleads viable claims against Dr. Shah. *See* Doc. 13 at 8-14. Defendants cite no legal authority suggesting that Plaintiffs were required to address in their motion all arguments and evidence presented in the notice of removal. What is more, the burden of establishing fraudulent joinder rests with Defendants, not Plaintiffs.

9

control." *Id.* (citing Doc. 1-2 at 20, 24). Plaintiffs further note that in December 2023, Dr. Shah emailed Plaintiffs a revised Compensation Manual purportedly comporting with "the documentation of the compensation updates that were presented to [Plaintiffs] for this fiscal year." *Id.* at 9 n.2 (citing Doc 1-2 at 105). Plaintiffs assert that they were never asked to execute this document, and the complaint specifically alleges that Dignity's insistence that the Wage Agreement "would not be binding and/or enforced unless the Plaintiffs executed a new written contract to that effect" is "inconsistent with the agreement the parties reached." *Id.* at 9 (quoting Doc. 1-1 ¶¶ 46-47).

In her July 19, 2023 email, Dr. Shah thanked Plaintiffs for the conversation they had regarding the terms of compensation, attached the data they reviewed, and noted that they discussed applying the compensation terms back to July 1, 2023. Doc. 1-2 at 87. Defendants assert that Dr. Shah's email is not an enforceable contract because it merely memorializes Dr. Shah's understanding of the discussion she had with Plaintiffs regarding the terms of the purported Wage Agreement. Doc. 20 at 9-10 (citing Doc. 1-2 at 87). But Plaintiffs do claim that Dr. Shah's email constitutes the Wage Agreement. The complaint specifically alleges that the Wage Agreement was entered when "Plaintiffs met with Dr. Shah to discuss revisions to their pay structure," and Dr. Shah subsequently "memorialized the Terms of the Wage Agreement in an email she sent to Plaintiffs." Doc. 1-1 ¶¶ 40-42; *see also* Doc. 1-2 at 79 (explaining in the demand letter that "[o]n July 19, 2023, Dr. Pooja Shah memorialized the agreed-upon terms reached in a meeting with [Plaintiffs] and confirmed the below compensation increases would have a retroactive effective date of July 1, 2023."). The Court will not rewrite the complaint as alleging that Dr. Shah's email constitutes the Wage Agreement. *See* Doc. 23 at 2.

Defendants further assert that Dr. Shah's email does not memorialize an agreement of any sort and instead memorializes a "discussion" or "conversation" she had with Plaintiffs as part of an ongoing negotiation. Doc. 20 at 10-11 (citing Doc. 1-2 at 7, ¶ 19). But Plaintiffs disagree, and affirmatively allege that the parties "reached an agreement" on

10

revisions to Plaintiffs' pay structure when they met in July 2023. Doc. 1-1 ¶¶ 41-42; *see also* Doc. 1-2 at 82 (demand letter asserting breach of the agreement).

Defendants cite the demand letter as further evidence showing that Plaintiffs knew Dr. Shah could not personally enter an agreement regarding their compensation. Doc. 20 at 11. Defendants note that the demand letter was sent to Dignity and did not claim that Dr. Shah had any personal liability. *Id.* As the complaint makes clear, however, Plaintiffs initially believed Dr. Shaw had authority to contract on Dignity's behalf and did not have reason to assert her personal liability until Dignity claimed – after receipt of the demand letter – that Dr. Shah was not authorized to enter the Wage Agreement on Dignity's behalf. Doc. 1-1 ¶¶ 38, 77. Defendants further note that the demand letter acknowledged that "Dignity claimed the [Wage Agreement] simply required the legal and finance departments' perfunctory approval." Doc. 20 at 11 (quoting Doc. 1-2 at 79). Plaintiffs explain that Dignity made this claim *after* the parties had already entered the Wage Agreement and the "perfunctory approval" was not necessary to make the Wage Agreement an enforceable contract. Doc. 23 at 7.

Defendants essentially ask the Court to resolve all factual disputes in their favor in determining whether Dr. Shah has been fraudulently joined. Defendants are correct that they may present facts and evidence showing the joinder to be fraudulent (Doc. 20 at 4), but "the Ninth Circuit has explained that the fraudulent joinder inquiry should not turn on the resolution of complex factual disputes.'" *McBee v. Raytheon Techs. Inc.*, No. LA CV23-07271 JAK (BFMx), 2024 WL 182282, at *4 (C.D. Cal. Jan. 16, 2024) (quoting *Allen v. Boeing Co.*, 784 F.3d 625, 634 (9th Cir. 2015)). Indeed, the Ninth Circuit made clear in *Grancare* that "the complaint will be the most helpful guide in determining whether a defendant has been fraudulently joined," and a defense should not require "a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." 889 F.3d at 548-49 (citations omitted); *see also Jacob v. Mentor Worldwide, LLC*, 393 F. Supp. 3d 912, 919-20 (C.D. Cal. 2019) ("The defendant has a high burden of proof when establishing fraudulent joinder. A removing defendant may present evidence

11

to prove fraudulent joinder, but the district court must resolve all disputed questions of fact in the plaintiff's favor.") (citing *Grancare*, 889 F.3d at 549); *Garcha v. Quality Quartz Eng'g, Inc.*, No. 19-CV-01989-YGR, 2019 WL 2464489, at *4 (N.D. Cal. June 13, 2019) ("[T]he standard for establishing fraudulent joinder is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so.") (citation omitted); *Madayag v. McLane/Suneast, Inc.*, No. 1:16-CV-1082 AWI SAB, 2017 WL 30014, at *4 (E.D. Cal. Jan. 3, 2017) ("[T]he fraudulent joinder doctrine requires more than a plaintiff being incorrect; the pleading against the non-diverse defendant must border on the improper. . . .  The fact that the party may lose or even the fact that the party will probably lose does not affect the party's right to present its claim, make its arguments, and receive a ruling from a court with proper jurisdiction.") (citation omitted).

Defendants have not presented "extraordinarily strong evidence or arguments" that Plaintiffs "could not possibly prevail" on their alternative breach of contract claim against Dr. Shah. *Grancare*, 889 F.3d at 548. They have not met their burden of proving fraudulent joinder in count two.

### B. Court Four – Promissory Estoppel.

"In Arizona, promissory estoppel may be pleaded as an alternative to a breach of contract claim." *D Stadtler Tr. 2015 Tr. v. Gorrie*, No. CV-22-00314-PHX-DWL, 2023 WL 2503642, at *36 (D. Ariz. Mar. 14, 2023) (citing *AROK Const. Co. v. Indian Const. Servs.*, 848 P.2d 870, 878-79 (Ariz. Ct. App. 1993)). "[P]romissory estoppel applies where the defendant has made a promise that the plaintiff actually relied upon, to his detriment, and where it was reasonably foreseeable that the plaintiff would [justifiably] rely." *Horodner v. Midwestern Univ.*, No. CV-20-01800-PHX-JAT, 2022 WL 4367601, at *4 (D. Ariz. Sept. 21, 2022) (citing *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. Ct. App. 2002)).

Count four alleges that "the Wage Agreement constitutes a clear and unambiguous promise to Plaintiffs that Dignity would pay Plaintiffs increased wages pursuant to the Terms[,]" and to the extent Dr. Shah "did not make this promise in her capacity as Dignity's

CMO/agent, the Wage Agreement constitutes a clear and unambiguous promise to Plaintiffs that Defendant Shah would pay Plaintiffs increased wages pursuant to the Terms." *Id.* ¶¶ 153-54. Count four further alleges that Defendants should have reasonably foreseen that Plaintiffs would rely on the promise, and Plaintiffs justifiably relied on the promise to their detriment by continuing to work for Dignity in lieu of more lucrative employment. *Id.* ¶¶ 155-57.

Plaintiffs argue that they have stated a viable promissory estoppel claim against Dr. Shah. Doc. 13 at 13 (citing *West v. Hunt Foods*, 225 P.2d 978, 983 (Cal. Ct. App. 1951) (holding that the plaintiff stated prima facie promissory estoppel claim based upon a promise from the company's president that the company would pay plaintiff retirement benefits); Restatement (Second) of Agency § 330 (1958) ("A person who tortiously misrepresents to another that he has authority to make a contract . . . on behalf of a principal whom he has no power to bind, is subject to liability to the other in an action of tort for loss caused by reliance upon such misrepresentation.")). Defendants arguments regarding the promissory estoppel claim mirror their arguments regarding the breach of contract claim and fail for the same reasons. *See* Doc. 20 at 14-16.[6]

To the extent Defendants challenge the sufficiency of the complaint's allegations to support a promissory estoppel claim, that argument is without merit. *See id.*; Doc. 23 at 10. "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Grancare*, 889 F.3d at 549. A mere possibility that the claim could survive in state court is enough for remand. *Id.* (quoting *Hunter*, 582 F.3d at 1046); *see also Jenkins v. Medtronic Inc.*, No. CV-16-01802-PHX-DGC, 2016 WL 4158887, at *2-3 (D. Ariz. Aug. 5, 2016) (explaining that even a "'glimmer of hope' that plaintiff can establish the claim is sufficient to preclude application of the fraudulent joinder doctrine") (citations omitted).

---

[6] Defendants contend that nowhere in the complaint are facts alleged which amount to detrimental reliance. Doc. 20 at 15. This is not correct. The complaint alleges that Plaintiffs continued to work for Defendants in lieu of accepting "more lucrative employment[.]" Doc. 1-1 ¶ 156. This allegation reasonably can be inferred as substantially and materially worsening Plaintiffs' position.

13

Defendants fail to show there is no possibility the state court would find the complaint states a promissory estoppel claim against Dr. Shah. The claim is not "wholly insubstantial and frivolous." *Grancare*, 889 F.3d at 549.

### C. Leave to Amend Requires Remand.

Plaintiffs argue that even if the Court were to be persuaded by Defendants' arguments, remand is still warranted because Plaintiffs may amend the complaint to cure deficiencies in the claims against Dr. Shah. Doc. 13 at 14. Plaintiffs also assert they can add a claim for breach of implied warranty of authority against Dr. Shah. *Id.* at 14-15; *see Zugsmith*, 344 P.2d at 742-43 ("[A] person who purports to make a contract on behalf of a principal whom he has no power to bind thereby becomes subject to liability to the other party thereto upon an implied warranty of authority") (quoting Restatement of Agency § 329); *Hudlow v. Am. Est. Life Ins. Co.*, 526 P.2d 770, 773 & n.4 (Ariz. Ct. App. 1974) (explaining that the remedy for a party injured by an agent who acts without authority of his principal is to sue the agent for breach of an implied warranty of authority) (citing *Davis*; Restatement (Second) Agency §§ 329-30 (1958)); *see also* Restatement (Third) of Agency § 6.10 (2006).

"If a federal court determines that a deficiency in the complaint regarding allegations against a non-diverse defendant could 'possibly be cured by granting the plaintiff leave to amend,' it must remand the case to state court." *OpenGov, Inc. v. GTY Tech. Holdings Inc.*, No. 18-CV-07198-JSC, 2019 WL 2010707, at *2 (N.D. Cal. May 7, 2019) (quoting *Grancare*, 889 F.3d at 550); *see Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1034 (C.D. Cal. 2016) (same); *Schultz v. Doe 1*, No. 23-CV-03290-BLF, 2023 WL 7924717, at *5 (N.D. Cal. Nov. 16, 2023) (same).

Defendants contend that the proposed implied warranty claim would be futile because Plaintiff's knew they were negotiating solely with Dignity. Doc. 20 at 16. But Dignity can act only through its agents, *see Davis*, 66 P.2d at 241, and Dignity has not shown by clear and convincing evidence that Dr. Shah did not imply (falsely) that she had authority to negotiate with Plaintiffs and enter the Wage Agreement on Dignity's behalf.

What is more, the policy in favor of leave to amend must be applied with liberality. *See* Ariz. R. Civ. P. 15(a)(2); *Owen v. Super. Ct. of State of Ariz.*, 649 P.2d 278, 282 (Ariz. 1982) ("Leave to amend is discretionary, but amendments will be liberally allowed [because] trial on the merits of the claim is favored[.]").

Because the state court could grant leave to amend, the Court must "afford the state court the opportunity to make that decision and remand the litigation." *Garcia v. Nestle USA, Inc.*, No. C 23-06199 WHA, 2024 WL 923774, at *5 (N.D. Cal. Mar. 1, 2024).

### IV. Plaintiffs' Request for an Award of Attorney's Fees and Costs.

Plaintiffs seek an award attorney's fees and costs under 28 U.S.C. §1447(c). Doc. 13 at 15-16. "Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Removal is not objectively unreasonable 'solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.'" *Grancare*, 889 F.3d at 552 (citations omitted).

Although ultimately not persuasive, the Court does not find Defendants' fraudulent joinder arguments objectively unreasonable. The Court will deny Plaintiff's request for an award of fees and costs. *See Amato v. Holladay Bank & Tr.*, No. CV-20-01013-PHX-DWL, 2020 WL 5652170, at *10 (D. Ariz. Sept. 23, 2020) ("Although the Court has ruled in Plaintiff's favor, the question of fraudulent joinder presented a debatable issue. Plaintiff's request for attorneys' fees will therefore be denied.").

**IT IS ORDERED**:

1. Plaintiffs' motion to remand (Doc. 13) is **granted**.
2. Plaintiffs' request for an award of attorney's fees and costs is **denied**.
3. The Clerk is direct to remand this case to Arizona state court.

Dated this 24th day of September, 2024.

*David G. Campbell*

David G. Campbell
Senior United States District Judge

15